IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| RODNEY WASHINGTON | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| VS. | * | |
| | * | NO: 4:09CV00755  SWW |
| DIXIE RESTAURANTS, INC., ET AL. | * | |
| | * | |
| Defendants | * | |

## ORDER

Plaintiff Rodney Washington ("Washington") brings this action *pro se* under Title VII of the 1964 Civil Rights Act, as amended by the Civil Rights Act of 1991, against his former employer, Dixie Restaurants, Inc. ("Dixie").  Washington claims that Dixie subjected him to racial harassment and terminated his employment based on his race and in retaliation for complaining about racial discrimination.   Before the Court is Dixie's motion for partial summary judgment (docket entries #43, #44, #45),[1] Washington's response in opposition (docket entry #46), Dixie's reply (docket entry #47), and Washington's sur-reply (docket entry #48).  After careful consideration, and for reasons that follow, Dixie's motion for partial summary judgment will be granted.  Washington's wrongful termination claims are dismissed with prejudice and his racial harassment claim remains.

---

[1]In its reply brief, Dixie acknowledges that its motion for summary judgment does not address Washington's claim that he endured racial harassment and that the motion for summary judgment pertains only to Washington's wrongful termination claims.

**I.**

The following facts, which are undisputed,[2] are taken from Dixie's statement of undisputed facts and documents submitted in support of Dixie's motion for partial summary judgment. In November 2005, Dixie opened the Fire Fall Grill & Bar ("Fire Fall") in North Little Rock and hired Washington as server. In November 2008, Dixie's president, Frank Battisto, called Fire Fall employees to a meeting and announced that the restaurant would close on December 22, 2008. Battisto offered each employee the opportunity to work at local Dixie Café Restaurants, and he offered severance pay, based on the average number of hours worked during the previous two months, to any employee who remained employed at Fire Fall through December 21, 2008.

On December 1, 2008 after Washington learned how his severance pay would be calculated, he submitted a note to Jim Simonds, Fire Fall's general manager, requesting that the payroll department adjust his hours because he had intentionally failed to clock in at the beginning of his shifts. The note reads:

<u>Jim</u>

Re: Closing date

Two things:

---

[2]Local Rule 56.1 provides that a party moving for summary judgment must submit a statement of the material facts as to which it contends there is no genuine issue to be tried, and the non-moving party must file a responsive statement of the material facts as to which it contends a genuine issue exists to be tried. "All material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . . " Local Rule 56.1(c).

Could you ask the payroll office

1. (longshot) if they would go back and adjust my hours over the last 6 months. For the last year trying to help <u>cut labor cost</u> I clocked in upon getting 1st table whether I opened or not.  They can just make it 11:00 across the board.  (Didn't realize it would hurt trying to help out.)

2. Could you ask if she can give me a weekly hourly avg. (20, 30 ??)

Thanks

Rodney

Docket entry #44, Ex. B.

After learning about Washington's note, Battisto directed Simonds to review Washington's time records.  Simonds' investigation revealed that out of eighty work shifts, Washington had clocked in late sixty-two times.  Additionally, by signing each of his paycheck stubs, Washington had represented that his reported hours, pay, and tips were accurate.

On December 12, 2008, Battisto met with Washington and informed him that an investigation was underway regarding his claim that he failed to report hours worked.   During the meeting, Washington claimed that he had been discriminated against and that he did not plan to continue working for Dixie.  On December 16, 2008, Washington reported to work, and Battisto informed him that his employment with Dixie was terminated  based on dishonesty and failure to clock in.

Washington filed a claim for unemployment benefits, which was denied on the ground that the stated reason for his termination was falsification of company records.[3]  On appeal,

---

[3]Under Arkansas law, an employee is disqualified to receive unemployment benefits if the Director of the Department of Workforce Services finds that he or she was "discharged from his or her last work for misconduct in connection with the work."   *See* Ark. Code Ann. § 11-10-514(a)(1).

Washington argued that he did not intentionally falsify his time records and that Battisto terminated his employment because he had complained about discrimination during the December 12, 2008 meeting.

After a hearing, an Arkansas Appeal Tribunal hearing officer affirmed the determination that Washington was not entitled to unemployment benefits. The hearing officer's written decision states in part as follows:

> The claimant signed each check stub to verify that it was a correct listing of hours and pay. The opposite was true; his hours were not correct and neither was his pay. Therefore, the claimant was discharged from last work for misconduct in connection with the work on account of dishonesty.
>
> It has to be remembered that the claimant has shown that he has been dishonest. His argument that he was discriminated against because of his race is not supported by credible evidence. It appears that he was trying to use the claim of discrimination for some type of personal gain, as the issue was not raised until he was near the very end of the term of work. It appears that with Battisto's history of taking action to correct problems[,] the claimant would have brought any mistreatment to his attention to get immediate correction if mistreatment actually existed. There was no mistreatment. Therefore, the reason for the discharge, dishonesty, was not a pretext for discrimination.

Docket entry #44, Ex. A.

Washington appealed, and the Arkansas Board of Review affirmed, finding by a preponderance of the evidence that Washington was discharged for dishonesty. Washington appealed, and the Arkansas Court of Appeals affirmed without a written opinion, finding substantial evidence to support the decision below.

Washington filed this lawsuit on September 12, 2009, claiming that Dixie subjected him to racial harassment and terminated his employment in retaliation for his complaints about racial discrimination.

## II.

Dixie moves for partial summary judgment, arguing that pursuant to the doctrine of collateral estoppel or issue preclusion, this court is precluded from entertaining Washington's claim that his termination was based on discrimination or retaliation.  The Full Faith and Credit Act requires federal courts to give the same preclusive effect to a state-court judgment as another court of that State would give.  *See* 28 U.S.C. § 1738; *see also Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 293, 125 S. Ct. 1517, 1527 (2005)(citations omitted).  Under Arkansas law, the doctrine of collateral estoppel bars the re-litigation of issues of law or fact actually litigated in an earlier proceeding, provided that the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in question.  *See Crockett v. Counseling Services of Eastern Arkansas, Inc.*, 85 Ark. App. 371, 378, 154 S.W.3d 278, 282 (2004)(citing *Beaver v. John Q. Hammons Hotels*, 355 Ark. 359, 138 S.W.3d 664 (2003)).  Additionally, the Supreme Court of Arkansas has held that when an administrative body acts judicially or quasi-judicially, its decision may have a preclusive effect in a second proceeding.  *See Hamilton v. Arkansas Pollution Control & Ecology Com'n*, 333 Ark. 370, 374, 969 S.W.2d 653, 656 (1998).   Arkansas law provides that the following elements must be present in order to establish collateral estoppel: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a final and valid judgment; and (4) the issue must have been essential to the judgment.  *See  Beaver v. John Q. Hammons Hotels, L.P.,*  355 Ark. 359, 363, 138 S.W.3d 664, 666 (2003)(citing *Looney v. Looney*, 336 Ark. 542, 986 S.W.2d 858 (1999) and *Fisher v. Jones*, 311 Ark. 450, 844 S.W.2d 954 (1993)).

In this case, each of the foregoing elements is present.  Washington's wrongful

termination claim under Title VII cannot succeed absent a showing that his termination was motivated by race discrimination or retaliation.  Washington placed the issues of discrimination and retaliation into issue in the state administrative proceedings, and the Arkansas Appeal Tribunal and Board of Review made explicit findings that Dixie's asserted reason for terminating Washington's employment was not pretext for discrimination or retaliation and that Dixie terminated Washington because he falsified time records.  Furthermore, Washington received a full and fair hearing regarding his claims and judicial review of the final administrative decision.  The Court agrees that Arkansas law would preclude Washington from re-litigating his claim that discrimination or retaliation was the real reason behind Dixie's decision to end his employment.

### III.

For the reasons stated, Defendant's motion for partial summary judgment (docket entry #43) is GRANTED.  Plaintiff's wrongful termination claims based on discrimination and retaliation are DISMISSED WITH PREJUDICE, and Plaintiff's racial harassment claim remains.

IT IS SO ORDERED THIS 7TH DAY OF JULY, 2010.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE