**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

RODNEY WASHINGTON, Plaintiff

VS. NO: 4:09CV00755 SWW

DIXIE RESTAURANTS, INC., Defendant

**ORDER**

Plaintiff Rodney Washington ("Washington") brings this action *pro se* under Title VII of the 1964 Civil Rights Act, as amended by the Civil Rights Act of 1991, against his former employer, Dixie Restaurants, Inc. ("Dixie"). Before the Court is Dixie's motion for summary judgment (docket entries #54, #55, #56) and Washington's response in opposition (docket entry #57). After careful consideration, and for reasons that follow, the motion is granted. Washington's remaining claim, that Dixie subjected him to a racially hostile work environment, is dismissed with prejudice.

**I**.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rest on mere allegations or pleading denials, but must "come forward with specific facts showing that there is a genuine issue for trial." *Id*. at 587(internal quotations and citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

**II**.

The following facts are undisputed.[1] In November 2005, Dixie opened the Fire Fall Grill & Bar ("Fire Fall") in North Little Rock, and the general manager of the restaurant, Jim Simonds, hired Washington as a server. On December 16, 2008, Dixie's president, Frank Battisto, terminated Washington's employment for providing false information regarding time worked and for failure to clock in.

Washington filed a claim for unemployment benefits, which was denied on the ground

---

[1]Local Rule 56.1 provides that a party moving for summary judgment must submit a statement of the material facts as to which it contends there is no genuine issue to be tried, and the non-moving party must file a responsive statement of the material facts as to which it contends a genuine issue exists to be tried. "All material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . . " Local Rule 56.1(c).

that the stated reason for his termination was falsification of company records.[2] On appeal, Washington argued that he did not intentionally falsify his time records and that Battisto terminated his employment because he had complained about discrimination. After a hearing, an Arkansas Appeal Tribunal hearing officer affirmed the determination that Washington was not entitled to unemployment benefits. Washington appealed, and the Arkansas Board of Review affirmed, finding by a preponderance of the evidence that Washington was discharged for dishonesty. Washington again appealed, and the Arkansas Court of Appeals affirmed without a written opinion, finding substantial evidence to support the decision below.

Washington filed this lawsuit on September 12, 2009, claiming that Dixie subjected him to a racially hostile environment and terminated his employment in retaliation for his complaints about racial discrimination. By previous order, the Court dismissed Washington's wrongful termination claim as barred under the doctrine of collateral estoppel.

**III**.

Now before the Court is Dixie's motion seeking summary judgment on Washington's hostile environment claim. Dixie asserts that Washington has failed to allege facts or present evidence that he endured racially discriminatory conduct during his employment with Dixie.

An employer creates an actionable hostile work environment if "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working

---

[2]Under Arkansas law, an employee is disqualified to receive unemployment benefits if the Director of the Department of Workforce Services finds that he or she was "discharged from his or her last work for misconduct in connection with the work." *See* Ark. Code Ann. § 11-10-514(a)(1).

environment." *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21 (1993). To be actionable, an allegedly hostile work environment must be both objectively and subjectively offensive--one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 2283 (1998)(setting forth standards to evaluate claims of hostile work environment based upon sexual harassment); *see also Gipson v. KAS Snacktime Co*., 171 F.3d 574, 578 (8th Cir. 1999) ("The same standards are generally used to evaluate claims of hostile work environment based upon sexual harassment and racial harassment.").

To hold an employer liable for a racially hostile work environment caused by the actions of a supervisor, the aggrieved employee must show: (1) he is a member of a protected group; (2) unwelcome harassment occurred; (3) a causal nexus existed between the harassment and his protected-group status; and (4) the harassment affected a term, condition, or privilege of employment. *See Carter v. Chrysler Corp*., 173 F.3d 693, 700 (8th Cir.1999).

In his complaint, Washington makes no specific claims regarding racial harassment, alleging only that he was "harassed and berated by superiors."[3] In deposition, Washington recounted instances where Simonds "nitpicked" or criticized his job performance and closely monitored his work, and he testified that Simonds sometimes used an African-American dialect and uttered phrases such as "you know what I'm saying" and "word, I'm down." Additionally, Washington charges a white manager named Mellisa with the following conduct:

---

[3]In deposition, Washington testified that a coworker named Mark cursed at employees and managers. However, he acknowledged that Mark's "tirades" were directed at black and white employees and managers and it "was not a racist situation." Docket entry #55, Ex. B (Washington Dep. at 35).

- When a black employee arrived at work in a new car, Mellisa stated, "I wonder where he stole that from."

- After Washington inquired whether another employee was related to Melissa, Mellisa stated, "Don't you know all white people look alike?"

- When Washington attempted to take home left over pizza, Mellisa asked to see the contents of the container holding the pizza.

- When Washington served a former Dixie employee who had been terminated for stealing, Mellisa asked Washington whether he was trying to help the former employee steal.

Simond's alleged conduct amounts to criticism of Washington's job performance, not actionable harassment based on race. *See Hannonn v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1047 (8th Cir. 2003) (employer's complaints regarding plaintiff's body odor and work performance, on numerous occasions, amounted to criticism, not harassment). And Washington's testimony regarding a white manager named Mellisa does not indicate the existence of a racially hostile work environment. "To determine whether the harassment affected a term, condition, or privilege of employment, [a court must] consider 'the frequency of the behavior, its severity, whether physical threats are involved, and whether the behavior interferes with plaintiff's performance on the job.'" *Wright v. Rolette County* 417 F.3d 879, 885 (8th Cir. 2005)(citing *Henthorn v. Capitol Communications, Inc.*, 359 F.3d 1021, 1026 (8th Cir.2004)). Here, Mellisa's offhand comments and isolated incidents in which she offended Washington by suggesting that he might steal simply do not amount to changes in the terms and conditions of his employment.'" *Wright v. Rolette County* 417 F.3d 879, 885 (8th Cir. 2005)(citing *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1158 (8th Cir. 1999)). In sum, the Court finds no genuine issues of fact for trial on Washington's claim that Dixie subjected him to a racially hostile work environment.

**IV.**

For the reasons stated, the Court finds that Defendant's motion for summary judgment (docket entry #54) should be and it is hereby GRANTED. There being no remaining issues for trial, pursuant to the judgment entered together with this order, this case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 26TH DAY OF OCTOBER, 2010.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE